382 So.2d 141 (1980)
Charlie REESE, Appellant,
v.
STATE of Florida, Appellee.
No. 78-1527.
District Court of Appeal of Florida, Fourth District.
April 9, 1980.
*142 Richard L. Jorandby, Public Defender, and Tatjana Ostapoff, Asst. Public Defender, West Palm Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Joy B. Shearer, Asst. Atty. Gen., West Palm Beach, for appellee.
ANSTEAD, Judge.
On appeal, appellant, Charlie Reese, contends that the trial court erred in making certain remarks to a witness concerning perjury and that these remarks resulted in the witness changing her testimony to the prejudice of appellant.
Reese was convicted of the second degree murder of James Brown. Brown's body, bearing five stab wounds, was found in Reese's car. In a statement given to police and admitted into evidence, Reese characterized Brown as his "buddy" and stated that they had been drinking together on the day of Brown's death. Reese stated that Brown, while riding as a passenger in Reese's car, instructed Reese to pull off the road when Brown saw two men he knew in a parked car. When they stopped, according to Reese, the men beat both him and Brown and took Reese's clothes and wallet. Someone told Reese to run and he did.
Nicki Carter testified that Reese came to her rooming house, dressed only in undershorts, and asked if someone would take him to the police station. Carter drove Reese back to his car where she saw Reese reach into the car and put something silver in his shorts.
Reese's girlfriend, Mary Footman, when deposed testified that on the day of the murder she saw Reese carrying a knife she had previously given to him. However, at trial, Ms. Footman denied ever giving Reese a knife or that Reese had a knife on the day of the murder.
The prosecutor questioned Ms. Footman about her changed testimony whereupon the following colloquy ensued out of the presence of the jury:
Q That's not what you told us here today is it?
A No.
Q Would you tell us why you changed your mind?
A Cause that was a lie.
Q That was a lie?
THE COURT: Now, let me interrupt you here. And advise this witness. Now, Ms. Footman, it is the crime of perjury under the laws of this state for a witness to tell a lie after being placed under oath and sworn to tell the truth. There are different kinds of perjury. If you lie in an official proceeding. And a court trial is an official proceeding. And also if you lie when you gave your deposition to the states attorney and assistant public defender that was also an official proceeding. And if you lie in an official proceeding after you've been placed under oath, you have committed the crime of perjury in an official proceeding. And if that is done, you can be charged, tried and if you're found guilty of that perjury you can be sentenced to 5 years in the state prison of this state. Do you understand what I'm telling you?
THE WITNESS: Yes.
THE COURT: I just want to be sure that you were well and fully aware of the law as it regards perjury. And I'm instructing you that you're to tell the truth here today. If you don't tell the truth here today, I'm going to have the state attorney after this trial is over to file an information against you for the crime of perjury in an official proceeding. I'm going to have you arrested and put in jail and a bond in your case will be set in the amount of $10,000. And you'll be tried for that crime of perjury here in this courtroom, and if you're found guilty, I can assure you I'm going to send you off to state prison for 5 years. So, if you want to sit here and lie to us here today, you can start packing your bags to go to Raiford or some other prison in this state.
I'm telling you to tell the truth here today under oath. Do you understand what I'm saying?
THE WITNESS: Yes.

*143 THE COURT: All right, Mr. Kanarek, you want to cross examine on the witness's testimony?
CROSS EXAMINATION
BY MR. KANAREK:
Q Ms. Footman, now that the Judge has advised you what the law is in Florida, is it your testimony now that Charlie Reese had a knife the day of this homicide or did not have a knife?
A He had one.
Defense counsel objected to the court's admonition to Footman and moved for a mistrial, which was denied.
In Webb v. Texas, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972), the defendant, on trial for burglary, called his only witness, a prison inmate. The trial court on its own initiative, and outside the presence of the jury, addressed the following remarks to the witness:
Now you have been called down as a witness in this case by the Defendant. It is the Court's duty to admonish you that you don't have to testify, that anything you say can and will be used against you. If you take the witness stand and lie under oath, the Court will personally see that your case goes to the grand jury and you will be indicted for perjury and the liklihood [sic] is that you would get convicted of perjury and that it would be stacked onto what you have already got, so that is the matter you have got to make up your mind on. If you get on the witness stand and lie, it is probably going to mean several years and at least more time that you are going to have to serve. It will also be held against you in the penitentiary when you're up for parole and the Court wants you to thoroughly understand the chances you're taking by getting on that witness stand under oath. You may tell the truth and if you do, that is all right, but if you lie you can get into real trouble. The court wants you to know that. You don't owe anybody anything to testify and it must be done freely and voluntarily and with the thorough understanding that you know the hazard you are taking. 93 S.Ct. at 352.
The witness thereafter refused to testify for any purpose. The Supreme Court concluded that the judge's
threatening remarks, directed only at the single witness for the defense, effectively drove that witness off the stand, and thus deprived the petitioner of due process of law under the Fourteenth Amendment. Id. at 353.
In Davis v. State, 334 So.2d 823 (Fla. 1st DCA 1976), cert. denied 345 So.2d 427 (Fla. 1977), a prosecutor interviewed a material prosecution witness shortly before trial. When the witness indicated that she would testify in favor of the defendant and contrary to deposition testimony, the prosecutor advised her that if she committed perjury, he would have a duty to prosecute for perjury, which carried a penalty of 15 years. Another state attorney told the woman he would personally see that she received a 15 year sentence. The court held that the prosecutor had improperly coerced the witness:
While it is true that the assistant state attorneys admonished the witness to tell the truth, it must have been obvious to the witness that the "truth" was that which she had testified to at an earlier deposition. Rules of evidence and procedure exist which are designed to assist prosecution and defense alike in eliciting the truth from balky witnesses. Coercion and threats are not among these rules. Id. at 826.
In Nazworth v. State, 352 So.2d 916 (Fla. 1st DCA 1978), the court considered a witness' testimony to be "tainted with the same infirmities as we found present in Davis v. State," when a state investigator told a witness that he would get 15 years for perjury if he didn't testify in accordance with his former statements against the defendant.
While the remarks of the trial court here were not as forceful as those involved in the Webb case, supra, and did not drive the witness from the stand, we believe the remarks, when considered together with the immediate change in testimony by the witness, constituted prejudicial error under the *144 holdings in Davis v. State, supra, and Nazworth v. State, supra. It is apparent that Ms. Footman believed that if she continued to testify contrary to her deposition testimony, she was going to be sent to jail. Being so convinced, she then contradicted the testimony she had given a few minutes earlier and affirmed her deposition testimony. Unfortunately, as with any witness whose memory is suddenly refreshed when confronted with the prospect of jail, one cannot be certain which version of the facts is indeed the "truth."
The proper procedure to follow when a witness deviates from prior sworn testimony, to the surprise of the party calling such witness, is to declare such witness hostile and allow the party to cross-examine and impeach the witness. The trier of fact can then decide which version of the "truth" presented by the witness is to be believed, and the issue of perjury is left for a separate proceeding. Davis v. State, supra.
In accordance with the above opinion the judgment and conviction of the trial court is hereby reversed, and this cause is remanded for a new trial.
BERANEK and HURLEY, JJ., concur.