847 So.2d 518 (2003)
Thaddeus Leighton HILL, Appellant,
v.
STATE of Florida, Appellee.
No. 5D02-2299.
District Court of Appeal of Florida, Fifth District.
April 4, 2003.
Rehearing Denied June 13, 2003.
*519 James B. Gibson, Public Defender, and Susan A. Fagan, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Lamya A. Henry, Assistant Attorney General, Daytona Beach, for Appellee.
GRIFFIN, J.
Thaddeus Leighton Hill ["Hill"] appeals the lower court's denial of his motion for post-conviction relief pursuant to Rule 3.850, Florida Rules of Criminal Procedure.
Hill was charged with sexual activity with a child by a person in familial or custodial authority. He was found guilty by a jury and, on May 25, 2000, he was sentenced by the court to ten years' imprisonment *520 to be followed by twenty years' sex offender probation. Hill apparently filed a direct appeal, but that appeal was voluntarily dismissed.
On October 20, 2000, Hill filed a motion for post-conviction relief seeking relief based on newly discovered evidence. He claimed that the victim[1] had falsely testified at trial based upon instructions given to her by the prosecutor. Attached to the motion was an affidavit signed by the victim:
At the trial of State of Florida v. Thaddeus Hill, I falsely testified regarding the events on or about April 5, 1999, at Volusia County, Florida. Thaddeus Hill did not engage in sexual activity with me on or about that date. His sexual organ did not make contact with any of my sexual organs on or about that date. My testimony stating otherwise was the result of [the prosecutor's] informing me as to what I needed or had to say at Mr. Hill's trial. I was told that if I testified as I did, that Mr. Hill would receive time served or probation. My testimony or statement at trial was not true. The account that I told to the jury was based on the direction of the prosecutor as to what I should say.
The trial court ordered the State to respond to this motion.
The State's response asserted that the prosecutor denied the allegations. The response further stated:
The State notes that the substance of the allegation now being made by [Hill] was in fact argued by [Hill's] trial counsel to the jury in closing argument in this case ... The only additional fact presented in [Hill's] motion is that he has now obtained an affidavit from [the victim] to support his claim. [Hill] was and is unable to dispute that he engaged in sexual activity with [the victim]; the evidence at trial conclusively established that his semen was found on her crotch and buttocks area. Hill's position was and is that his penis did not penetrate or have union with the child's vagina, and that the girl's trial testimony to the contrary was the product of [the prosecutor's] prompting. Accordingly, the State disputes the factual allegations contained in [Hill's] motion for post-conviction relief regarding [the prosecutor].
The State requested that the matter be set for an evidentiary hearing and counsel was appointed for Hill.
An evidentiary hearing was held on January 9, 2002. Prior to any testimony and outside the presence of the witness, the State brought to the court's attention the possible criminal exposure of the victim for perjury and suggested the court advise her of her right to counsel. The victim was then called to the stand and the court made the following statement to her:
SomebodyMr. Hillor, I think Mr. Hill filed a motion with the Court and he attached to the motion an affidavit that has the name of [the victim] in the affidavit. I'm not familiar with your signature or I don't know if this is your affidavit or anything else, so I'm not I'm notI'm not telling you this is your affidavit, but thethe thing I need to tell you about and make sure you understand is that, there is a potential here that you may be about to incriminate yourself and basically confess to the commission of a felony, and beforeif you want to do that, that's perfectly okay, but I think you need to have the advice of counsel. I need toyou need to know what you're doing before you do something that could incriminate yourself and is a felony.

*521 Again, I'm not telling you you've done that or you're about to do that. That may not be the case, but it's potentially the case. The felony that I'm referring to is, the affidavit states thatthat [the victim] gave false testimony at Mr. Hill's trial, and basically that's a confession to perjury, and ifagain, I don't know if this is your signature and I don't know that you made that affidavit. I don't know if that's what you're about to say on the stand, if you were questioned. But if you were to say that, it could very possibly expose you to a felony charge and up to five years in state prison as a consequence.
And so you need to understand that you do have the rights that any criminal defendant has before you do something like that. You have the right to an attorney. You have the right toto not incriminate yourself. You can't be required to give testimony against yourself; to basically confess to a crime, if you have, in fact, committed a crime. Youyou have the right to consult with your attorney before you say anything, before you give any testimony, and I just want you to understand that you can invoke those rights, and if you want to, you can waive those rights too.
If you want to go ahead with the hearing and let the attorneys ask you questions about this piece of paper that was filed and about what testimony you might have pertinent to this hearing, we can certainly go ahead. But before we did that, I wanted to make sure you understood your right to counsel and your right to the advice of counsel.
The court then asked the victim whether she wanted to go forward with the hearing or talk to an attorney, and the victim responded that she wanted to talk to an attorney. As a result, the court entered an order appointing a special public defender for the victim and recessed until the victim had time to consult with him.
On May 8, 2002, the evidentiary hearing was continued with the public defender present on behalf of the victim. The public defender announced to the court that he had advised the victim to assert her Fifth Amendment privilege on the stand. The victim took the stand and asserted her right not to testify. The defense had no other witnesses to call. Defense counsel argued that the actions of the court and the State caused the victim not to testify even though she had previously indicated in her affidavit that she would testify, thus depriving Hill of his right to due process and entitling him to a new trial. Defense counsel also moved for compelled immunity to the victim so that he could present evidence on his motion. The court gave defense counsel time to prepare a memorandum of law in support of compelled immunity to the victim. Thereafter, the lower court entered an order denying Hill's request for compelled immunity and denying Hill's motion for post-conviction relief.
The threshold issue is whether the victim waived her privilege against self-incrimination by executing the affidavit recanting her trial testimony. Although we have found no case law in Florida deciding whether the filing of an affidavit can constitute a waiver of the Fifth Amendment privilege, other courts have held that it can. See Young v. Young, 316 Ark. 456, 872 S.W.2d 856 (1994) (former wife waived Fifth Amendment privilege against self-incrimination through affidavit which she filed with court); In re Vitamins Antitrust Litigation, 120 F.Supp.2d 58 (D.D.C.2000) (it is well-established that sworn affidavits are testimonial for purposes of the Fifth Amendment privilege against self-incrimination); Nutramax Laboratories, Inc. v. Twin Laboratories, Inc., 32 F.Supp.2d 331 *522 (D.Md.1999) (officer of corporate defendant waived privilege against self-incrimination through introduction of affidavit); Luna v. Superior Court, 407 Mass. 747, 555 N.E.2d 881 (1990) (petitioner waived privilege against self-incrimination when he voluntarily submitted an affidavit, and waiver extended to his testimony at trial).
Although the victim's execution and delivery of the affidavit can constitute a waiver, this court held in R.V.P. v. State, 395 So.2d 291 (Fla. 5th DCA 1981), that the privilege against self-incrimination is waived only if the waiver is knowing and intelligent. See also Commonwealth v. Hammond, 50 Mass.App.Ct. 171, 736 N.E.2d 398 (2000), review denied, 433 Mass. 1101, 742 N.E.2d 81 (2001) (witness' giving of affidavit recanting aspects of his trial testimony did not amount to waiver of his privilege against self-incrimination with respect to perjury, where witness did not meet with counsel before signing affidavit.) In the present case, no evidence was taken as to whether the victim spoke with an attorney prior to signing the affidavit or understood the legal effect of execution of the affidavit. Since the victim decided not to testify after consulting with an attorney during the evidentiary hearing, it might be surmised that she did not know the consequences of her recantation until that time. However, this fact cannot be determined with certainty. Because the right to be free from self-incrimination is a fundamental principle secured by the Fifth Amendment, waiver of the privilege will not be lightly inferred, and courts will generally indulge every reasonable presumption against finding a waiver. Jenkins v. Wessel, 780 So.2d 1006, 1008 (Fla. 4th DCA 2001) (citing State v. Spiegel, 710 So.2d 13, 16 (Fla. 3d DCA), review denied, 728 So.2d 205 (Fla.1998)). If it is determined that the victim was not aware that the execution of this affidavit was a waiver of her Fifth Amendment privilege against self-incrimination, no error was committed below.
Nor can we agree that the State acted wrongfully. The court, rather than the State, initially informed the victim that she potentially faced criminal liability based on the facts alleged in Hill's motion; the victim was not present in the courtroom when the State suggested the court advise the victim of her right against self-incrimination.
The court informed the victim in a neutral and objective manner of her potential for perjury charges. A judge may advise a witness of his or her rights when the witness is potentially exposing himself or herself to criminal liability such as perjury. See Reese v. State, 382 So.2d 141 (Fla. 4th DCA 1980); Webb v. Texas, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972); United States v. Smith, 997 F.2d 674 (10th Cir.1993). However, the judge may not threaten or "effectively drive the witness off the stand." Reese, 382 at 143; see also Muhammad v. State, 782 So.2d 343, 357 (Fla.2001) (Florida appellate courts have recognized that reversible error may occur when a trial judge threatens a witness with perjury charges during his or her testimony when the witness indicates he or she is changing previous testimony); Webb, supra (lengthy admonition of witness by judge implying that judge expected witness to lie and assuring him of prosecution for perjury went beyond mere warning the witness of his right to refuse to testify and effectively drove the witness off the stand); Smith, supra (judge could advise the witness of possibility of prosecution for perjury if testimony differs from that previously given, but court may abuse its discretion by actively encouraging witness not to testify or by badgering witness to remain silent). We find the trial judge's *523 statements in this case to be within the realm of propriety.
Finally, the trial court was not obliged to compel the State to grant immunity to the victim. Hill relied on State v. Nessim, 587 So.2d 1344 (Fla. 4th 1991), where the court ruled that "governmental misconduct resulting in a distortion of the fact-finding process was adequate grounds for the trial court to give the state the option of granting a witness ... immunity or suffer a dismissal of the pending charges." Id. at 1346; see also State v. Montgomery, 467 So.2d 387 (Fla. 3d DCA 1985). Here, the trial court found no basis for such relief. We accordingly remand this matter to the lower court so that the defendant can be heard on the issue of waiver. In all other respects, the appealed order is affirmed.
AFFIRMED in part; and REMANDED for further proceedings.
PLEUS and TORPY, JJ., concur.
NOTES
[1] The record suggests that the victim (d/o/b 12/23/82) is Hill's step-daughter.